IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROLTA INTERNATIONAL, INC., ) | CASE NO. 20-82282-CRJ11 |
| EIN: xx-xxx1132 ) | CHAPTER 11 |
| ) | |
| Debtor. ) | |

**DEBTOR'S MEMORANDUM OF LAW
ADDRESSING ISSUES RAISED BY THE COURT**

COMES NOW Rolta International, Inc. ("Rolta International," the "Debtor"), in the above-styled Chapter 11 case and submits this Memorandum of Law addressing issues raised by the Court as follows:

**LEGAL ARGUMENT**

**I. Venue is proper in the Northern District of Alabama for the bankruptcy filing of Rolta International, Inc, and its affiliates, as the "nerve center" of the entire operation is within the Northern District.**

Under subsection one of the bankruptcy venue statute, 28 U.S.C. § 1408(1), a Chapter 11 case "may be commenced in the district court for the district ... in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the [debtor] have been located for the one hundred and eighty days immediately preceding such commencement." 11 U.S.C. § 1408(1); *see also A.B. Real Estate v. Bruno's, Inc. (In re Bruno's, Inc.),* 227 B.R. 311, 322 (Bankr. N.D. Ala. 1998)(citing the bankruptcy venue statute). Subsection one renders venue proper in any one of the four listed locations.

Large companies with far-flung operations and subsidiaries operating in multiple locations, such as the Debtor and its affiliates, thus enjoy a surprising degree of freedom in their choice of

1

venue. The relative flexibility afforded by 28 U.S.C. §1408(1) offers a corporate entity the potential for a wide choice of venues based on domicile and the location of its principal assets or principal place of business. Since the test is in the alternative, venue may properly lie in more than one district. The larger corporate enterprise has even more options, since §1408(2) permits every affiliated entity in a corporate structure to file in any venue appropriate for any one of them, as discussed below.

The U. S. Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L.Ed.2d 1029 (2010), sought to resolve a circuit split concerning the meaning of the phrase "principal place of business" in the context of diversity jurisdiction. The *Hertz* Court noted as a part of its historical review, that over the years "[d]ecisions under the Bankruptcy Act did not provide the firm guidance for which [judges] had hoped because courts interpreting bankruptcy law did not agree about how to determine a corporation's 'principal place of business.'" *Id. at* 89, 130 S. Ct. 1190, 175 at __. This was particularly true in cases where a corporation's headquarters and business activities were located in different (or multiple) states. *Id.* The Court ultimately resolved the split in favor of the "nerve center" test, holding that the phrase "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id. at* 92-93, 130 S. Ct. at 1192, 175 L. Ed. 2d at __.

The Supreme Court's interpretation of the phrase "principal place of business" in §1332 is relevant to the interpretation of the identical phrase in §1408(1). Indeed, bankruptcy courts have cited to the *Hertz* decision to support the conclusion that a debtor's principal place of business refers to its "nerve center," which will typically be found at its corporate headquarters. In the case of *Matter of Asanda Air II LLC*, for example, the bankruptcy court, in analyzing whether venue was proper for the debtor, opined, "Principal place of business refers to the 'nerve center' - the

2

'place where a corporation's officers direct, control, and coordinate the corporation's activities.'" 600 B.R. 714, 724 (*citing Hertz Corp. at* 92-93, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010); *see also, e.g., In re DDMD Trucking, Inc.,* No. 14-12511- ta11 (Bankr. D.N.M. Jan. 28, 2015) (applying *Hertz* to the bankruptcy venue statute).

The Declaration of Preetha Pulusani ("Declaration"), filed October 29, 2020, in this matter [Doc 4], establishes Pulusani as President of International Operations for Rolta and President of Rolta International, Inc., the US subsidiary and international headquarters of Rolta India, Ltd. Pulusani identifies Rolta International, Inc., Rolta Global B.V., Rolta UK Limited, Rolta Middle East FZ-LLC, Rolta Americas LLC and Rolta, LLC ("the Rolta Debtors") as international subsidiaries or affiliates of Rolta India, Ltd. In her capacity President of International Operations for Rolta and President of Rolta International, Inc., Pulusani is "familiar with the day-to-day options, business and financial affairs of the Rolta Debtors." Declaration, Doc. 4. Pulusani's authority, based on her own description, is clearly overarching in that she directs and controls the management of Rolta International.

Pulusani describes how Rolta International currently is managing its corporate enterprise. Significantly, she works remotely, by electronic means, as the President of International Operations for Rolta from her primary residence located in Madison County, Alabama. Declaration, Doc. 4. She has in fact acted as and maintained the "nerve center" for Rolta International in Madison County for years, as she has supervised all international operations (other than India) from her home in Madison County, Alabama. *Id.* She testifies that the Executive Vice President of Rolta International, Blane Schertz, also performs his duties for the company primarily from his home in Madison County, Alabama. *Id.*

3

Much pertaining to the Debtor's business centers on Madison County, Alabama: Pulusani resides in Madison County, Alabama; the Executive Vice President of Rolta International, Blane Schertz, also resides in Madison County, Alabama; and both work from their Madison County homes in running the companies. *Id.* Pulusani has provided the Court with sworn testimony establishing that the location in Madison County, Alabama, is indeed the "nerve center" of the business and has been for a number of years.

The advent of COVID-19 and the international quarantine have had the result of reinforcing the limitation of the decision-makers' physical location to Madison County, Alabama. Due to the pandemic, Pulusani has had only limited travel since March 2020. *Id.* Consequently, the nexus of management operations has remained in the Northern District of Alabama for the vast majority of the last 180 days. *Id.* As such, "COVID Venue" is an additional imposed presence for Rolta International's principal place of business. Thus, the Northern District of Alabama, in which Madison County is located, is the proper venue under the law for the filing of the bankruptcy petition.

A further provision of the bankruptcy venue statue applicable to this Debtor's filing is the option under subsection two, 28 U.S.C. § 1408(2), for a debtor to file in a fifth location, the district "in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership." 28 U.S.C. § 1408(2). This presents a large business enterprise such as Rolta International with a panoply of venue options for its own filing and that of its affiliates.

The Bankruptcy Code defines "affiliate" as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." 11 U.S.C.

4

§ 101(2)(B). The second part of the definition of "affiliate" describes "a horizontal relationship between a debtor and another entity which share a common parent (or parent-like) entity, which accordingly justifies treating the debtor and its 'sibling' entity as affiliates." *In re Reichmann Petroleum Corp.*, 364 B.R. 916, 920 (Bankr. E.D. Tex. 2007). A copy of the organization chart of the Rolta entities (filing and non-filing) is attached as Exhibit A. As "sibling" entities, they are affiliates within the meaning of the bankruptcy venue statute. Accordingly, because these are affiliates of Rolta International and because venue is proper in the Northern District of Alabama for Rolta International under 28 U.S.C. § 1408(1), venue is also proper in the Northern District of Alabama for these other entities under 28 U.S.C. § 1408(2).

II. **No conflict of interest exists that would disqualify counsel for Rolta International from also representing the other Rolta Debtors in this matter.**

Most courts acknowledge that, in the absence of an actual conflict of interest, a single firm can adequately represent multiple debtors. Consequently, absent a disqualifying interest, a court should not deprive a Chapter 11 debtor of its chosen counsel inasmuch as the attorney-client relationship is "highly confidential, demanding personal faith and confidence" and the relationship requires that the estate and its attorney "work harmoniously." *In re Universal Enterprises of W. Va., LLC*, Case No. 09-2862 (Bankr. N.D.W. Va. 2010) (citing *In re Mandell,* 69 F.2d 830, 831 (2d Cir.1934).

Section 327(a) lays out the initial requirement that counsel in a bankruptcy case be free from disqualifying conflicts of interest. Counsel must be "disinterested" and hold no "interest adverse to the estate." 11 U.S.C. § 327(a). To that end, Fed. R. Bankr. P. 2014(a) requires disclosures of any connections to "the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee [here, Bankruptcy Administrator], or any person employed in the office of the United States Trustee." *Id.* Arguably, "determination of the

5

Case 20-82282-CRJ11    Doc 52    Filed 11/13/20    Entered 11/13/20 17:22:41    Desc Main
Document    Page 5 of 13

sufficiency of the disclosures…should be made by balancing the plain language of [Fed. R. Bankr. P. 2014(a)'s] mandate [to] disclose 'all connections' against the common-sense analysis of what connections are…pertinent to the ultimate question of disinterestedness so that competent professional do not find the requirements of representing parties in bankruptcy cases so burdensome as to deter them from doing so." *In re Fibermark Inc*., 2006 WL 723495, at *11 (Bankr. D. Vt. 2006). The ultimate point of the court's evaluation of an attorney's representation of multiple clients is whether such connections "could reasonably have an effect on the attorney's judgment in the case." *In re Tribeca Mkt. LLC*, 516 B.R. 254, 279 (S.D.N.Y. 2014).

One option for the court is disqualification, considered a drastic remedy that "requires courts to avoid overly mechanical adherence to disciplinary canons at the expense of litigants' rights to freely choose their counsel." *In re Legacy Dev. SC Grp. LLC,* 517 B.R. 604, 606 (Bankr. D.S.C. 2014) (citing and quoting *Shaffer v. Farm Fresh Inc.,* 966 F. 2d 142, 145-46 (4th Cir. 1992). Moreover, while Fed. R. Bankr. P. 2014 (a) imposes a mandatory obligation to disclose competing interests, it does not create a mandatory rule of disqualification if it is violated. *In re Persaud*, 496 B. R. 667, 676 (E.D.N.Y. 2013). Thus, whether a situation rises to the level of disqualification is in the court's discretion. The court should weigh, "against the risks of any *potential* difficulties, the potential advantages to the bankruptcy estate of a dual appointment, such as savings of time and money spent on the estate administration." *In re Harold & Williams Dev. Co.,* 977 F.2d 906, 911(4th Cir. 1992) (emphasis in original); *see also In re Mulberry Phosphates, Inc.,* 142 B.R. 997 (Bankr. M.D. Fla. 1992) (Factors to consider in disqualification include additional administrative expenses, delays, and prejudices to Debtors.).

Section 327(c) provides guidance on factors for the court to consider. 11 U.S.C. § 327(c). The Bankruptcy Code does not define the term "actual conflict," but courts have generally applied

6

a factual analysis to determine whether an actual conflict of interest exists. *In re Bullitt Utilities, Inc.*, 558 B.R. 181, 184 (Bankr. W.D. Ky. 2016). Where there is an actual conflict of interest coupled with an objection to the engagement by a creditor or the Bankruptcy Administrator, "the court shall disapprove such employment." 11 U.S.C. § 327(c). However, and key to the instant matter, the conflict of interest "must be a real one and not a hypothetical or fanciful one." *Legacy Dev. at* 606 (quoting *Sanford v. Commonwealth of Va.*, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009)). It is well established that, before counsel may be disqualified, the record must support the finding that a conflict exists sufficient to prohibit the attorney's representation of the debtor. *Mulberry Phosphates at* 998.

Further, the mere existence of inter-company claims between several entities is insufficient alone to warrant disqualification. *In re International Oil Co.,* 427 F.2d 186 (2nd Cir.1970); *see also* 11 U.S.C. § 327(c). In fact, it is quite common for a single law firm to represent a parent company and all its subsidiaries either when they are all debtors or when only the parent is a debtor. *Mulberry Phosphates at* 998. Indeed, multiple representation is often the most efficient and sensible way to reorganize multiple debtors. *See, e.g., In re Adelphia Communications Corp.,* 342 B.R. 122, 128 (S.D. N.Y. 2006) ("Requiring appointment of independent professionals to represent each individual debtor in all such cases, regardless of the factual circumstances, would burden estates with unjustified and insurmountable costs.").

Considering these factors, the court in *In re Legacy Development* denied a U.S. Trustee's motion to disqualify attorneys who were representing co-defendants and related entities. 517 B.R. 604. The court disagreed with the trustee's contention that a direct conflict of interest came from representation of the affiliated defendants because the financial issue made one defendant a creditor of the other.

7

"[I]nterests are not considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash." *In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 461 (Bankr. N.D. Ohio 2003) (*quoting In re Caldor, Inc.–NY*, 193 B.R. 165, 172 (Bankr. S.D.N.Y. 1996)); *In re Licking River Mining, LLC*, 562 B.R. 351, 357 (Bankr. E.D. Ky. 2016). Again, a potential conflict does not require disqualification. *In re Hash*, 472 B.R. 866, 868 (Bankr. W.D. Ky. 2012) (court approved application to employ despite potential future conflict of interest). At this point in the matter before the Court, there simply is no actual conflict in existence. Consequently, there is no basis or authority for declining the Debtors' Application on the mere possibility that a conflict may arise at some point in the future.

An actual conflict of interest would look like the case in *Forizs & Dogali PA v. Siegel*, 2012 WL 4356266, where special counsel for the trustee representing a victim in a Ponzi scheme was hired by the trustee to sue other victims of the Ponzi scheme (in direct conflict with the theories of recovery he maintained for his first client) and then filed a claim on behalf of his first client "with a claim for recovery of amounts that would not be sustainable on a Ponzi scheme theory. It seems like an actual conflict to me." *Forizs* at *2. The case before the Court in no way resembles this conflict.

Another actual conflict of interest can be seen in *In re WM Distribution*, 571 B.R. 866 (Bankr. D. N. M. 2017), where the two debtors were clearly at odds with one another, potentially due to the marital discord between the two majority owners. They were not operating to achieve a common goal, but instead were operating to obtain an advantage over each other. That is not the situation here.

Rather, these Debtors are operating together to maximize assets to repay creditors. Nor is there an "active competition" between the interests of the Debtors, where the interest of one can

8

Case 20-82282-CRJ11    Doc 52    Filed 11/13/20    Entered 11/13/20 17:22:41    Desc Main
Document    Page 8 of 13

only be served at the expense of the other. *In re Midway Motor Sales*, 355 B.R. 26, 33 (Bankr. N.D. Ohio 2006). In other words, at this juncture of the case and under these circumstances, the interests of any of the Rolta affiliates are identical. Although no other parties have raised any issue as to conflict in representation between and among the Rolta Debtors, it should be noted that it would be inappropriate for opposing counsel to raise an apparent conflict of interest between his adversary's joint clients. *See Derrick v. Nat'l Health Fin. DM, LLC, et al.* (*In re Derrick*), No. CV-13-01706-PHX-NVW; BK. No. 10-BK-36666-SSC, 2014 WL 171845 ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent….").

Further, counsel for the co-debtors has declared that it will not assert or represent any of the Rolta parties as a creditor. In the unlikely event that a potential conflict develops, the affected entities will be engaged with "conflict counsel" for the debtor and creditor's counsel for the creditor so that the rights of all are preserved in a fair and impartial manner.

**III.     Joint Administration involving the various Rolta entities is proper.**

As is made clear by the amended rolling 13-week budgets, Rolta International, Rolta UK, and Rolta Middle East are distinct entities with separate operating budgets. The remaining Debtors--Rolta Americas, LLC, Rolta LLC, and Rolta Global BV--are dormant entities with no cash flow; however, they may be necessary for reorganization of the bonded indebtedness.

> As noted in 2 Norton Bankr. L. & Prac. 3d § 21:1:
>
> Joint administration is a procedural device authorized by Bankruptcy Rule 1015(b). It is designed to promote administrative convenience and cost efficiencies by avoiding the duplication of effort which results when cases involving related debtors proceed separately. Unlike substantive consolidation, which merges the assets and liabilities of the debtor entities into a unitary debtor estate to which all holders of allowed claims are required to look, joint administration does not affect the substantive rights of claimants or the respective debtor ….

Joint administration is sought to promote judicial economy and not to substantially consolidate the

9

assets and liabilities of the Debtors. Although the Court should be mindful of potential conflicts, Rolta International contends, along with the other Rolta Debtors, as stated above, that ample procedures have been set up to avoid such conflicts.

## CONCLUSION

In conclusion, Rolta International respectfully requests this Court to find that venue is proper; that there is no conflict in representation of the various Rolta Debtors by Stuart M. Maples and Maples Law Firm, P.C.; that joint administration of these cases is proper; and that the Court grant such other and further relief as the Court deems just and proper.

This 13th day of November, 2020.

*/s/ Stuart M. Maples*
STUART M. MAPLES
(ABS-1974-S69S)
PROPOSED COUNSEL FOR DEBTOR

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

10

## CERTIFICATE OF SERVICE

   I do hereby certify that on November 13, 2020, a copy of the foregoing document was served on the following by Electronic Case Filing a copy of the same.

Richard Blythe
P. O. Box 3045
Decatur, AL  35602
*Bankruptcy Administrator*

20 Largest Unsecured Creditors

All parties requesting notice

                           */s/ Stuart M. Maples*
                           STUART M. MAPLES

11

Case 20-82282-CRJ11    Doc 52    Filed 11/13/20    Entered 11/13/20 17:22:41    Desc Main
Document    Page 11 of 13



# EXHIBIT A

