IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>ROLTA INTERNATIONAL, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>CASE No. 20-82282-CRJ11 |

**OBJECTION TO THE DEBTORS' MOTIONS FOR ENTRY ORDER AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL AND FOREIGN VENDORS**

Creditors Pinpoint Multi-Strategy Master Fund (formerly known as Pinpoint Multi-Strategy Fund), Value Partners Fixed Income SPC – Value Partners Credit Opportunities Fund SP, and Value Partners Greater China High Yield Income Fund (together, the "Judgment Creditors") hereby object to the *Motions for Entry of Order Authorizing, But Not Directing, Payments of Prepetition Claims of Certain Critical and Foreign Vendors* (together, the "Critical Vendor Motions") filed by Debtor Rolta International, Inc. ("Rolta International") [Dkt. 97], Debtor Rolta UK Limited ("Rolta UK") [Dkt. 98], and Debtor Rolta Middle East FZ-LLC ("Rolta Middle East" and, collectively with Rolta International and Rolta UK, the "Debtors") [Dkt. 99].[2]

---

[1] The debtors in these jointly administered Chapter 11 cases are Rolta International, Inc. [Petition No. 20-82282-CRJ11], Rolta Middle East FZ-LLC [Petition No. 20-82285-CRJ11], and Rolta UK Limited [Petition No. 20-82287-CRJ11]. On November 24, 2020, this Court approved the joint administration of these three Debtors' Chapter 11 cases. *See* Final Order Directing Joint Administration of Rolta International, Inc., Rolta Middle East FZ-LLC, and Rolta UK Limited Chapter 11 Cases [Dkt. 93] (hereafter, the "Joint Administration Order").

[2] Because the Chapter 11 cases of Rolta International, Rolta Middle East, and Rolta UK have been consolidated on the docket number 20-82282-CRJ-11, *see* Joint Administration Order [Dkt. 93], all docket numbers referenced herein refer to the docket 20-82282-CRJ-11 unless otherwise indicated.

1

The Critical Vendor Motions—filed weeks after the Debtors commenced their Chapter 11 cases—should be denied. As a threshold matter, the Debtors have not satisfied the basic pleading requirements under Federal Rule of Bankruptcy Procedure 9013. Rule 9013 requires that a "motion shall state *with particularity* the grounds therefor, and shall set forth the relief or order sought." Fed. R. Bankr. P. 9013 (emphasis added); *see also In re Weatherford*, 434 B.R. 644, 649–50 (Bankr. N.D. Ala. 2010) (discussing Rule 9013 and applying the *Twombly* and *Iqbal* particularity standards to all contested matters, noting that neither the Court nor a respondent to a motion can adequately prepare for a hearing where "a motion simply states conclusions with no supporting factual allegations").

Furthermore, the Debtors did not—as they must—"provide sufficient evidence to demonstrate that the Critical Vendors are actually critical," nor did they show "that there were no alternatives to using each particular Critical Vendor." *In re News Pub. Co.*, 488 B.R. 241, 246 (Bankr. N.D. Ga. 2013).[3] Those requirements exist for good reason: "[a] motion to pay 'critical vendors' . . . is essentially a request for the court to authorize an exception to the general principle favoring equal treatment of similar claims, since the debtor is asking the court for permission to pay some, but not all, of its prepetition unsecured creditors." *In re Fultonville Metal Prod. Co.*, 330 B.R. 305, 313 (Bankr. M.D. Fla. 2005) (citation omitted).

Here, the Debtors have failed to meet these requirements. Nowhere in the Critical Vendor Motions are the services or goods provided by the purported critical vendors even disclosed, let

---

[3] *See also In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D. Fla. 2005) ("payment of pre-petition amounts to critical vendors" is appropriate "only if an evidentiary record establishes that: (i) the payments are necessary to the reorganization process; (ii) a sound business justification exists in that the critical vendor(s) refuse to continue to do business with the debtor absent being afforded critical vendor status; and (iii) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered" (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–77 (Bankr. S.D.N.Y. 1989)).

alone properly described. And the conclusory assertions by the Debtors—that these goods and services are "essential" and are "critical to the operation of the Debtors' business," Rolta International, Inc.'s Critical Vendor Motion [Dkt. 97], at 2–3—are bereft of the substance and detail required for this Court to approve their payment. *See In re News Pub. Co.*, 488 B.R. at 245 (explaining that the "vague and generalized statement" about the critical nature of the supposed critical vendors "was unsubstantiated by any other evidence presented at the hearing" and therefore "was not sufficient to satisfy" the "stringent test" for payment to critical vendors). That is reason alone to deny the Critical Vendor Motions. *Id.* at 244 (denying critical vendor motion where "descriptions list[ed] the goods and/or services provided by each vendor and detail[ed] reasons why that particular arrangement is beneficial to Debtor, and in some cases, why there might be risk or negative consequences to ending the relationship" but did not "provide a reason why the vendor is critical, as opposed to just beneficial, important, or preferred").

Indeed, Exhibits A to the Critical Vendor Motions—which identify the vendors the Debtors seek authority to pay—raise more questions than they answer. For example, Rolta Middle East proposes to pay several individuals, *see* Rolta Middle East's Critical Vendor Motion [Dkt. 99], Ex. A ("Salma Jail Nohra," "Rahul Malankar," and "Diala Bou Karim," among others), and travel agencies, *see id.* ("All Tayyar Travel and Tourism" and "Al Ghaith & Al Moosa Travel Agency LLC (ALTA)"). Meanwhile, Rolta UK seeks authority to make payments to the financial institution HSBC and real estate consulting firm Knights Frank, with no explanation for what goods or services either provides to that Debtor. *See* Rolta UK's Critical Vendor Motion [Dkt. 98], Ex. A. Moreover, it is far from clear that the Debtors even have the cash resources necessary to make the payments for which they are seeking authorization. *See, e.g.*, Rolta Middle East's

3

Critical Vendor Motion [Dkt. 99], Ex. A (identifying approximately $1 million in total of critical vendor payments).[4]

The problems with the Debtors' conspicuous lack of disclosure are further underscored by the Debtors' financial schedules, which raise serious doubts as to whether the Debtors are, as they claim, true operating entities and indeed do what they say they do. For example, according to their schedules:

- Rolta UK has no executory contracts or leases, *see* Amended Chapter 11 Petition, *In re Rolta UK*, Case No. 20-82287 [Dkt. 66], at 25, values its intellectual property interests at $0.00, *see id.* at 15, and the majority of its assets are net operating losses, *see id.* at 16–17, rather than operating assets.

- Rolta Middle East has no executory contracts suggesting ongoing service relationships with customers, *see* Amended Chapter 11 Petition, *In re Rolta Middle East FZ-LLC*, Case No. 82-82285 [Dkt. 67], at 27, nor any interests in intellectual property, *see id.* at 15, and the vast majority of its assets are composed of net operating losses, *see id.*, and questionable receivables from affiliates, *see id.* at 23.

- Rolta International has no accounts receivable, *see* Amended Chapter 11 Petition [Dkt. 85], at 13,[5] no service contracts with customers, *see id.* at 24, and no

---

[4] By contrast, Rolta Middle East's most recent cash collateral budget suggests that the Debtor's cash balance will never exceed approximately $18,000 in 13-week budget, excluding payments to purported critical vendors. *See* Rolta Middle East's Amended Motion for Authorization to Use Cash Collateral, *In re Rolta Middle East-FZ-LLC*, Case No. 20-82285 [Dkt. 62], Ex. C.

[5] Moreover, the assertion by Rolta International in its financial schedules that it has no accounts receivable directly contradicts the financial portrait painted in its cash collateral budget. *Compare* Amended Chapter 11 Petition [Dkt. 85], at 13(no accounts receivable) *with* Amended Motion for Authorization to Use Cash Collateral [Dkt. 77], Ex. C (identifying accounts receivable "pending collection" to range from $ 129,300 to $36,750 during the 13-week budget period).

intellectual property of any value, *see id.* at 15, 36–89, and has substantially no assets other than ownership interests in and loans receivables from other Rolta entities, net operating assets, and "goodwill" from a corporate transaction, *see id.* at 14–17.

The Debtors' schedules—devoid of the hallmarks of operating businesses—belie the purportedly "active" nature of these three Debtors' operations.

For the foregoing reasons, the Court should deny the Critical Vendor Motions. At a minimum, the Court should require that each of the Debtors disclose the nature of the goods and services provided to each of the Debtors by the purported critical vendors, and provide evidence supporting their assertions that (i) these vendors are critical to the Debtors' businesses and (ii) these vendors are unwilling to do business with the Debtors going forward absent the payments outlined in Exhibit A to each of the Critical Vendor Motions.

[*Remainder of the page left intentionally blank.*]

Date: November 30, 2020            */s/ Bill D. Bensinger*

                                   Daniel D. Sparks
                                   Bill D. Bensinger

                                   CHRISTIAN & SMALL LLP
                                   505 North 20th Street, Suite 1800
                                   Birmingham, AL 35203
                                   (205) 795-6588
                                   ddsparks@csattorneys.com
                                   bdbensinger@csattorneys.com

                                   - AND –

                                   KOBRE & KIM LLP

                                   John Han
                                   Daniel J. Saval
                                   Josef M. Klazen
                                   Donna Xu

                                   800 Third Ave.
                                   New York, NY 10022
                                   +212 488 1200
                                   john.han@kobrekim.com
                                   daniel.saval@kobrekim.com
                                   josef.klazen@kobrekim.com
                                   donna.xu@kobrekim.com

                                   Geoffrey J. Derrick
                                   1919 M Street, NW
                                   Washington, DC 20036
                                   +202 664 1936
                                   geoffrey.derrick@kobrekim.com

                                   *Attorneys for Pinpoint Multi-Strategy Master Fund; Value Partners Fixed Income SPC-Value Partners Credit Opportunities Fund SP; and Value Partners Greater China High Yield Income Fund*

6

## **CERTIFICATE OF SERVICE**

      I do hereby certify that a copy of the above and foregoing instrument was filed with the Court's CM/ECF system, which will send an electronic copy to the Debtors' counsel and all parties who have appeared and requested electronic notice, on this the 30th day of November, 2020.

                                                */s/ Bill D. Bensinger*

                                                Bill D. Bensinger