IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROLTA INTERNATIONAL, INC,[1] ) | CASE NO. 20-82282-CRJ11 |
| EIN: xx-xxx1132 ) | CHAPTER 11 |
| ) | |
| Debtor. ) | (Jointly Administered) |

## AMENDED MOTION FOR ENTRY OF ORDER AUTHORIZING, BUT NOT DIRECTING PAYMENTS OF PREPETITION CLAIMS OF CERTAIN CRITICAL AND FOREIGN VENDORS

COME NOW Rolta International, Inc., Rolta UK Limited, and Rolta Middle East FZ, LLC (hereinafter collectively referred to as the "Rolta Debtors") in the above-styled Chapter 11 case, and hereby respectfully submit this Amended Motion for Entry of Order Authorizing, but Not Directing, Payments of Prepetition Claims of Certain Critical and Foreign Vendors (the "Critical Vendor Motion"). In support of this Critical Vendor Motion, the Rolta Debtors state as follows:

### INTRODUCTION

1. On October 29, 2020 (the "Commencement Date"), the Rolta Debtors commenced their chapter 11 bankruptcy cases by filing their bankruptcy petitions.

2. Since the Commencement Date, the Rolta Debtors have continued in possession of their property and control of their operations pursuant to §§ 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

3. The Court has jurisdiction of this motion pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(A) and (M) in that it concerns the administration of the estate and use of property of the estate.

---

[1] In addition to Rolta International, Inc., the Debtors include the following: Rolta Middle East FZ, LLC, Case No. 20-82285-CRJ-11; and Rolta UK Limited, Case No. 20-82287-CRJ-11.

## BACKGROUND

4. The Rolta Debtors are engaged in the business of rendering engineering software services; to provide general services with respect to data processing and conversion, including but not limited to, systems design and programing, programmer training, systems engineering, installation management, and consulting services; buying, selling, exchanging, leasing, marketing and distributing computer products of all types and descriptions and other related property; to patent, copyright and otherwise protect any intellectual property rights acquired by the corporation; and to acquire and dispose of real or personal property necessary or incidental to the conduct of its business operations.

5. Additional information regarding the Rolta Debtors' businesses, assets, capital structures, and the circumstances leading to the filing of these chapter 11 cases is set forth in the *Declaration of Preetha Pulusani in Support of Chapter 11 Petitions filed by the Rolta Debtors* (the "First Day Declaration") on the Petition Date.

## OPERATIONS RELATING TO MOTION

6. In the day-to-day operations, the Rolta Debtors use goods and services from both foreign and domestic vendors. Many of these goods and services are essential for the Rolta Debtors to conduct their day-to-day business.

7. If payments are not made to vendors who supply goods and services that are critical to the operations of the Rolta Debtors' businesses, goods may not be delivered and services may not be provided, thereby damaging the Rolta Debtors' ability to offer the highest quality services to its clients, its reputation, and its cash flow. Prompt and continued payment to the vendors the Rolta Debtors determine are critical to their operations is therefore necessary to continue the Rolta Debtors' business operations.

8. The ability to maintain relationships with key vendors and suppliers at this critical juncture is essential to the Rolta Debtors' abilities to reorganize. Flexibility to pay prepetition claims of certain critical and foreign vendors is crucial to the Rolta Debtors' reorganization.

## RELIEF REQUESTED

9. Pursuant to §§ 105(a) and 363 of the Bankruptcy Code, and under the "necessity of payment" doctrine, the Rolta Debtors seek the entry of an order authorizing, in their sole discretion and subject to the terms and conditions set forth herein, to pay, in the ordinary course of the business, the prepetition claims of certain vendors and shippers who supply goods or services critical to the continued operations of the Rolta Debtors' businesses.

10. Through the Critical Vendor Motion, the Rolta Debtors are not seeking to pay all prepetition claims of the critical vendors or shippers immediately. Rather, the Rolta Debtors propose only to pay such undisputed amounts in the ordinary course of the Rolta Debtors' businesses and on such terms and conditions as are consistent with the Rolta Debtors' prepetition practices and agreements.

11. Payment as provided herein will not create an undue hardship on the Rolta Debtors' cash flows because the Rolta Debtors propose to pay per their customary, prepetition terms and not on an accelerated basis. Current cash, plus cash generated in the ordinary course of the Rolta Debtors' businesses is reasonably expected to provide sufficient liquidity for payment of the critical vendor claims.

12. The Rolta Debtors also request a waiver of the notice requirement and the 14-day stay requirement under Fed. R. Bankr. P. 6004(a) and (h).

## IDENTIFICATION OF CRITICAL VENDORS

13. In conjunction with the commencement of these cases, the Rolta Debtors are developing lists of certain critical vendors that provide essential goods and services (the "Critical Vendors"). The criteria used to identify Critical Vendors include the following:

a. Whether the vendor provided goods or services essential to the Debtor's business;

b. Whether the goods and services could be supplied by a different vendor without disrupting the Debtor's operation;

c. Whether the vendor has (i) goods currently in transit to the Debtor which such goods are vital to the Debtor's operations; or (ii) services the vendor is in the midst of providing that are critical to the operation and maintenance of the business;

d. Whether the vendor has expressed willingness to continue supplying goods and services to the Debtor on a post-petition basis without payment of all or a substantial portion of the vendor's prepetition claim; and

e. Whether the vendor is obligated by contract or otherwise to supply goods or services to the Debtor post-petition.

14. When the Rolta Debtors have completed their analysis, they will file a list of the identified Critical Vendors in which they will set forth the amounts due to each such Critical Vendor (the "Critical Vendors List") and serve the Critical Vendors List on the proposed Critical Vendors. The Rolta Debtors request that proposed Critical Vendors have ten (10) days after the filing of the Critical Vendors List to object to treatment as a critical vendor subject to the terms and conditions requested herein.

15. The Rolta Debtors propose to condition payment to Critical Vendors upon

4

agreement by the Critical Vendors to continue supplying goods and services to the Rolta Debtors on terms that are acceptable to the Rolta Debtors. Such terms shall be in consideration of industry trade terms and existing contractual obligations between the parties and shall in no event be less than the Debtor's most favorable trade terms that were in effect within 180 days prior to the Commencement Date (the "Trade Terms").

16. The Rolta Debtors agree to maintain a separate matrix for each Debtor, copies of which are attached hereto as Exhibit A, Exhibit B, and Exhibit C, summarizing, with respect to the period following the Commencement Date: (a) the name of each Critical Vendor; (b) the amount each Critical Vendor has been paid on account of its claims; and (c) the goods or services provided by each Critical Vendor.

## BASIS FOR RELIEF REQUESTED

17. Payment to the Critical Vendors for prepetition obligations is authorized under § 363 of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." This section has been interpreted to authorize the payment of certain prepetition claims. *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.),* 29 B.R. 391, 397 (S.D.N.Y. 1983). The payments that the Debtor is requesting the Court to authorize would be made pursuant to a legitimate business justification as outlined above and is not for the preferential benefit of certain creditors. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that payments under § 363 must be made pursuant to a "business justification" and not simply to appease certain creditors).

18. The Court also has the power to grant the relief requested herein pursuant to its general equitable powers set forth in § 105(a) of the Bankruptcy Code. That section grants the

Court the authority to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." Payments of prepetition debts prior to implementation of a plan have been authorized under § 105(a) where payment of the prepetition obligation was essential to the debtor's continued operation. *See In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992).

19. Under the "doctrine of necessity," the Court may exercise its equitable powers to authorize a debtor to pay the prepetition claims of certain critical vendors. *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992).

20. Under Fed. R. Bankr. P. 6003, the Court may also authorize the Debtor to satisfy certain prepetition claims of the Critical Vendors because such relief is necessary to avoid immediate and irreparable harm. "[I]mmediate and irreparable harm" as used in Rule 6003 exists where the absence of relief would impair a debtor's ability to reorganize or would threaten the debtor's status as a going concern. *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36, n.2 (Bankr. S.D.N.Y. 1990).

21. If the Rolta Debtors are not authorized to pay the Critical Vendors as set forth in this Motion, immediate and irreparable harm would result. The Rolta Debtors depend heavily on an uninterrupted supply of goods and services in order to maintain their business operations. Without payment, some of the Critical Vendors could refuse to conduct future business with the Rolta Debtors or could refuse to complete pending transactions. The loss of such vendors and shippers would immediately and irreparably harm the Rolta Debtors and would jeopardize their abilities to reorganize. Accordingly, authorization to make payments to the Critical Vendors in the ordinary course of business and as set forth above during the first twenty (20) days of this case is essential.

22. Based on the foregoing facts and legal bases, the Rolta Debtors submit the relief

requested is necessary and appropriate, is in the best interests of the Rolta Debtors' estates and their creditors and should be granted in all respects.

23. Nothing contained in this Motion is intended to be or should be construed as: (a) an admission as to the validity of any claim against the Rolta Debtors; (b) a waiver of the Rolta Debtors' rights to dispute any claim on any ground; (c) a promise to pay any claim; (d) an implication or admission that any particular claim constitutes a claim of a Critical Vendor; or (e) a request to assume any executory contract or unexpired lease, pursuant to § 365 of the Bankruptcy Code.

### **NOTICE**

24. Notice of this Motion has been given to: (a) the United States Bankruptcy Administrator; (b) the Rolta Debtors' secured lenders; (c) the Rolta Debtors' 20 largest unsecured creditors; and (d) any party that has appeared and/or requested notice. The Rolta Debtors submit that, under the circumstances, no further notice of the hearing is necessary and request that any further notice be dispensed with and waived.

WHEREFORE the Rolta Debtors request that the Court enter an order granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Respectfully submitted on December 9, 2020.

> */s/ Stuart M. Maples*
> STUART M. MAPLES
> (ASB-1974-S69S)

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

7

Case 20-82282-CRJ11 Doc 130 Filed 12/09/20 Entered 12/09/20 12:45:36 Desc Main Document Page 7 of 13

## **CERTIFICATE OF SERVICE**

      I do hereby certify that on December 9, 2020, a copy of the foregoing document was served on the following by Electronic Case Filing a copy of the same.

Richard Blythe
Bankruptcy Administrator
P. O. Box 3045
Decatur, AL 35602

20 Largest Unsecured Creditors

All parties requesting notice

                                            */s/ Stuart M. Maples*
                                            STUART M. MAPLES

# EXHIBIT A

**Rolta**
**Rolta International Inc.**
**Critical Vendor Justification**

| Vendor | Summary of Critical Nature of each line item | Justification | Amount USD |
|---|---|---|---|
| VEN-730 ESRI | Critical GIS software needed for multiple customer projects | The Mapping/GIS Solutions we deliver to global customers have a mandatory requirement for ArcGIS software which is manufactured and sold by ESRI. | 40,416.44 |
| VEN-3829 SAP Technology Solutions, Inc. | Critical Subcontractor for AcePro project | This is an independent subcontractor providing services for AcePro project. He also worked earlier on our projects such as SAP NS2, Oracle to HANA migration etc., has a deep understanding of Rolta IP (Smart Migrate Tool) and is well trained on this project. Not paying him implies that we need to engage another SubK for the project. This is not viable as it entails substantial time in training and mentoring a new resource, the cost of which will be way more than $4,800. It is fiscally prudent (imperative) to retain this SubK for the continuing work on this project. | 4,800.00 |
| Grand Total | | | 45,216.44 |

# EXHIBIT B

**Rolta**
**Rolta UK Limited**
**Summary Justification for Critical Vendors**

| Name | Summary Justification for Critical Vendors | Detailed narrative as to why this is critical. If can not justify, simply say not critical. | Critical Vendors USD |
|---|---|---|---|
| VEN-137 HSBC UK BANK PLC | Bank charges auto debited; Operating accounts | This expense relates to bank charges for the month of September 2020. Bank auto debits these charges from our account every month and hence, this expense has already debited our account. It is not easy to open a new bank account in the UK and it takes long time to open the bank accounts. Even if we open new bank account, as these charges are already debited to our account, we will not be able to recover from HSBC. The only reason this is provided for here is because of the auto-debit by the bank which occurred prior to our instructions to cancel all auto-debits. | 91.03 |
| VEN-288 RKG Consulting | Payroll Consultant auto debited | This expense relates to processing payroll for the month of October 2020. Payment is auto debited from our account every month and hence, this expense has already debited our account. The only reason this is provided for here is because of the auto-debit by the bank which occurred prior to our instructions to cancel all auto-debits. | 1,560.00 |
| VEN-4003 BSI Group India Private Limited | Mandatory ISO support for Achilles audit needed for critical UK projects | ISO 27001 certification for Information Security Management is a mandatory requirement of compliance for all our ongoing contracts and tenders in pipeline due to the nature of work carried out in terms of handling Customer Asset Data. The existing certificate expired in March and this was not renewed at that time due to the COVID pandemic. BSI is carrying out the ISO 27001 audits and RIL + RUK functions have successfully completed Stage 1 of the process and will conduct Stage 2 audits in December followed by the certification. As we are required to be compliant contractually to continue with our subscription to the ISO 27001 certification, the auditors need to be paid. BSI has conducted these audits for Rolta for the past two years, they are aware about the workings, history and hence, are critical to continue and complete their work to certify Rolta UK. | 4,322.50 |
| Xcel Resources Ltd | Critical services subcontractor for UK customer project | Sathya Madasani is an external consultant hired to complete the ongoing project delivery requirements for Smart DCC Charging Reconciliation Project, as we do not have the required competency within Rolta (a combination of SAP HANA and AWS skillset). He is currently executing critical elements of the project which need to be delivered by December. Not paying Sathya will critically impede project delivery and result in non-compliance of our contractual obligation for a project of national importance resulting in material breach of contract and resulting penalties. | 7,150.00 |
| Knight Frank | Utilities for RUK office like handset hire, calling charges, postage, internet. Contractually obligated; Not paying will result in cancellation plus penalties. Approx. 2 months' charges | Knight Frank is the estate agent of RUK office Ianford. Current lease expires end of December 2021. Since it is a serviced office, we cannot have an outsider / third party provide utility service directly to RUK. In the extreme event of eviction we will lose access to Office infrastructure including customer leased lines and servers. These servers are owned by customer and as per service contract with the customer we need to ensure the safety and accessibility of the servers on day to day basis. In case of non payment, this could lead to possible eviction or being locked out of the office. We would default immediately on customer servers stationed on our premises leading to breach of contract and possibly losing contract all together. Possible outcomes include court cases leading to hefty commercial fines for breach of contract with the customer. | 2,776.05 |
| Vodafone | Mobile communications for employees | Rolta UK provides Mobile phones to employees for business use and they are critical for all day-to-day business operations. This has increased manifold during the pandemic. After evaluation of multiple providers, we found that Vodafone is the only provider with adequate network coverage in the RUK office compared to other providers such as O2, EE and 3. It is important to make this payment for continued service from Vodaphone for the entire employee base. | 410.97 |
| GE Smallworld | Software provider for critical project; sfw maintenance fees | We have purchased GE Smallworld software licenses to execute pilot projects on an ongoing assignment that has a potential project booking exceeding $15 million with a strategic customer. GE Smallworld is currently supporting the system and potential upgrades for us to match with the customer systems upgrades. We negotiated this support framework through payment terms on a quarterly basis. We are not in a position to terminate the ongoing support or not paying for work already performed by GE in the middle of a procurement process with the customer where demonstration of our system managing their data is an important element. | 603.83 |
| HSBC UK Bank PLC | Bank charges auto debited; Operating accounts | This expense relates to bank charges. Bank auto debits these charges from our account every month. We will not be able to close our accounts with the banks, till their charges are paid completely. | 140.90 |
| Total | | | 17,055.27 |

# EXHIBIT B

**Rolta**
**Rolta UK Limited**
**Summary Justification for Critical Vendors**

| Name | Summary Justification for Critical Vendors | Detailed narrative as to why this is critical. If can not justify, simply say not critical. | Services "Incurred" between Oct-09 to Oct-28-2020 - Reclamation |
|---|---|---|---|
| VEN-3686 Chss Ltd | Mandatory support for Achilles audit needed for critical UK projects | CHSS Limited provides RUK with guidance and advise on Health & Safety assessment, Occupational Health and Environmental Risk Assessment on retainer ship basis. It is extremely important for RUK business to be compliant with the local laws and legislations. Further CHSS Limited provides their assistance in preparation for Achilles Verify Category C Audit every year. RUK specialises in providing Software solutions to Utility companies (Gas, Electricity & Water) in the UK. All the Utility companies in the UK are required to select vendors which comply with Achilles audit and are registered on Achilles Database. All 4 of RUK's existing customers in the UK namely, UK Power Networks, Thames Water, Northern Power Grid and Smart DCC are Utility companies. Hence it is extremely critical for RUK Business to maintain the Achilles Audit Certification and be on Achilles Supplier database. CHSS Limited helps and advises on Health & Safety assessment, Occupational Health and Environmental Risk Assessment in relation to preparation of Achilles Audit. Hence it is vital to pay CHSS Limited invoices. Furthermore, if we engage with other supplier to provide these services, it will be more expensive as they will have to do the H&S assessment fromscratch and we will incur a new, mobilization one-time fee. CHSS Ltd has been doing this for Rolta UK for some time and understand Rolta's UK Health and Safety requirements. | 780.00 |
| Probe Consultancy | Financial and accounting professional services (partially outsourced) | For services provided within twenty day period from filing. | 2,080.00 |
| Total | | | 2,860.00 |

EXHIBIT C

# Rolta Middle East Justification for Critical Vendors

| Vendor | Summary of Critical Nature for each Line Item | Detailed narrative as to why this is critical. If can not justify, simply say not critical. | Amount in USD Payable soon (as per 13-Week cash flow and cash availability) |
|---|---|---|---|
| VEN-3322 Plumb Surveying | Services subcontractor for critical projects (Survey services) | Dubai Roads & Transport Authority (RTA) contracted Rolta in 2014 to update and maintain GIS data. This project has been continued year after year since. Current contract value is USD 934,557. Plumb Surveying has been our sub-contractor, providing field survey services for this project since 2014. Their role is extremely critical and specialized. Current accounts receivable from the project is USD 129K. Payment to Plumb Surveying is due within 30 days. A replacement vendor would need ramp up and knowledge transfer of 3 - 4 months. Discontinuation of services from Plumb Surveying would have severe consequences to this project and impact all other projects at RTA since the other | $ 7,711 |
| VEN-3990 ComDez Communication | Services subcontractor for critical projects - RTA BPM | Dubai Roads & Transport Authority (RTA) awarded Rolta a software service contract for implementing system upgrades to their Electronic No Objection Certificate (eNOC), previously build and deployed by Rolta. RTA's eNOC is a mission critical system. Primary scope for this project is to upgrade core Business Process Management technology. RTA is understandably keen to keep its risks to a minimum. For the User Interface / Experience (UX) component of this project, Rolta has outsourced to ComDez, run by a former Rolta employee extremely familiar with the eNOC system. Replacing ComDez would create an unacceptable delay in order to deliver on our commitments since knowledge transfer would be extensive. Current projected USD 210K invoice is dependent on the services delivery from ComDez. | $ 1,085 |
| VEN-3997 IDM Technologies | Services subcontractor for critical projects (IT manpower for RTA) | Rolta completed a project titled "Application Integration & Support for Identity Accesss Management" (IAM) for Dubai's Roads & Transport Authority (RTA) in 2019. Due to the success of that project, RTA was awarded a sole source phase 2 of this project to Rolta, valued at $2,463,459. The project runs from Jan 2020 to Dec 2021. Imminent invoicing for this project is $171K. Rolta has subcontracted part of the work to IDM Technologies. IDM supplies 8 highly skilled IT consultants with intimate knowledge of IAM architecture and RTA's business needs. Given the highly skilled nature of the IDM consultants required and intimate knowledge of RTA systems and needs, it could take 4 -6 months to find any replacement. Our agreement with IDM is to pay within 60 days. However, we have explained our situation to IDM | $ 16,777 |
| VEN-403 Tecom | Office lease | Rolta Middle East (RME) is registered with Tecom Freezone Authority. RME's Trade License (mandatory to operate in Dubai) is issued by Tecom. As per the local regulation, RME has to lease its office in Tecom's Freezone Jurisdiction. RME has annual lease contract with Tecom (Oct 2020 - Sep 2021). Lease is charged annually with quarterly payment terms. Our next lease payment covers Jan-Mar 2021. | $ 39,560 |
| Grand Total | | | $ 65,133 |

EXHIBIT C

Rolta Middle East
Justification for Critical Vendors

| Vendor | Summary of Critical Nature for each Line Item | Detailed narrative as to why this is critical. If can not justify, simply say not critical. | Amount for Services "Incurred" between Oct 09 and Oct 28, 2020 (Reclamation) |
|---|---|---|---|
| VEN-3322 Plumb Surveying | Services subcontractor for critical projects (Survey services) | Dubai Roads & Transport Authority (RTA) contracted Rolta in 2014 to update and maintain GIS data. This project has been continued year after year since. Current contract value is USD 934,557. Plumb Surveying has been our sub-contractor, providing field survey services for this project since 2014. Their role is extremely critical and specialized. Current accounts receivable from the project is USD 129K. Payment to Plumb Surveying is due within 30 days. A replacement vendor would need ramp up and knowledge transfer of 3 - 4 months. Discontinuation of services from Plumb Surveying would have severe consequences to this project, and impact all other projects at RTA since the other projects rely on this data. | $ 2,363 |
| VEN-3997 IDM Technologies | Services subcontractor for critical projects (IT manpower for RTA) | Rolta completed a project titled "Application Integration & Support for Identity Accesss Management" (IAM) for Dubai's Roads & Transport Authority (RTA)) in 2019. Due to the success of that project, RTA was awarded a sole source phase 2 of this project to Rolta, valued at $2,463,459. The project runs from Jan 2020 to Dec 2021. Imminent invoicing for this project is $171K. Rolta has subcontracted part of the work to IDM Technologies. IDM supplies 8 highly skilled IT consultants with intimate knowledge of IAM architecture and RTA's business needs. Given the highly skilled nature of the IDM consultants required and intimate knowledge of RTA systems and needs, it could take 4 -6 months to find any replacement. Our agreement with IDM is to pay within 60 days. However, we have explained our situation to IDM and they have been patient. Current accounts receivable from RTA for this project is $614,777. | $ 25,980 |
| VEN-4002 Hisham Abdelrahman Mohamed | Professional services subcontractor for DDA project | Hisham is a former Rolta employee who was an architect and central developer for the system Rolta developed and deployed at DDA. DDA has asked for some changes. Hisham is solely knowledgeable about the changes required, and possesses the intimate knowledge needed to make them. If we were to have to find an alternate, it would take significant time to find an individual, who would then need to build up sufficient familiarity to make the changes needed. This would take 4-6 months, which would be unacceptable to the customer. | $ 370 |
| Grand Total | | | 28,714 |