# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>ROLTA INTERNATIONAL, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-82282-CRJ11 |

## JUDGMENT CREDITORS' SUPPLEMENT TO THEIR
## MOTION TO DISMISS THE DEBTORS' CHAPTER 11 CASE

Creditors Pinpoint Multi-Strategy Master Fund (formerly known as Pinpoint Multi Strategy Fund), Value Partners Fixed Income SPC – Value Partners Credit Opportunities Fund SP, and Value Partners Greater China High Yield Income Fund (collectively, the "Judgment Creditors") hereby submit this supplement (the "Supplement") to their *Motion to Dismiss the Debtors' Chapter 11 Cases* (the "Motion") [Dkt. 126].[2]  In support of the Supplement and in further support of the Motion, the Judgment Creditors respectfully state as follows:

---

[1] The Chapter 11 cases of the Debtors Rolta International, Inc. [Case No. 20-82282-CRJ11], Rolta Middle East FZ-LLC [Case No. 20-82285-CRJ11], and Rolta UK Limited [Case No. 20-82287-CRJ11] are being jointly administered.  *See* Final Order Directing Joint Administration of Rolta International, Inc., Rolta Middle East FZ-LLC, and Rolta UK Limited Chapter 11 Cases, *In re Rolta International, Inc.*, Case No. 20-82282-CRJ-11 [Dkt. 93].  This Court denied the Debtors' request to jointly administer Rolta, LLC [Case No. 20-82283-CRJ11], Rolta Global B.V. [Case No. 20-82284-CRJ11], and Rolta Americas LLC [Case No. 20-82286-CRJ11].  *Id.*  For ease of reference, all docket entries referenced herein to the Debtors' Chapter 11 cases refer to the docket 20-82282-CRJ11, unless otherwise noted.  Because the Motion and this Supplement thereto (as defined below) relate to issues of fact and law that are common across the Debtors, the Judgment Creditors have filed the same Supplement in each of these proceedings.

[2] Except as stated herein, this Supplement incorporates by reference all terms and abbreviations previously defined in the Motion.

# PRELIMINARY STATEMENT

1. These Chapter 11 cases were filed in bad faith, without any valid reorganizational purpose or reasonable rehabilitation prospects. As the Court recognized at the December 22, 2020 status conference on the Motion, "[t]he real issue here is that the [D]ebtors have little operating business to reorganize and the cash flow is very limited." *See* Declaration of Donna (Dong Ni) Xu ("Xu Decl."), at Ex. A, at 11:22–24 (Dec. 22, 2020 Hr'g Tr.).

2. The Debtors have confirmed—as they must—that three of the Debtors (Rolta Americas, Rolta LLC, and Rolta Global) are dormant, non-operational, and have no employees or assets. And the schedules and other filings of the three so-called "operational" Debtors (Rolta International, Rolta Middle East, and Rolta UK) evince no ability to fund the Chapter 11 process, no viable business operations, dwindling cash resources, and few assets of value. The record, as of the Motion's filing, left little doubt that Debtors have no meaningful business enterprises to salvage. Motion ¶¶ 46–52.

3. Subsequent events have reinforced that conclusion. Significantly, at her December 17, 2020 deposition, Preetha Pulusani—Rolta International's President of International Operations—acknowledged that the Debtors had virtually no assets that could be monetized in these Chapter 11 cases and, except for a year or two as to a single Debtor, had never generated income during her approximately 13-year tenure at Rolta International. Ms. Pulusani also conceded that, over two months into these Chapter 11 cases, no concrete arrangements or prospects for funding these Chapter 11 cases exist, let alone for proper financing of the Debtors' operations. Similarly, she failed to explain how these Debtors—which she essentially described in her September 18 declaration as mere agents of the broader Rolta enterprise, heavily reliant on non-debtor and ultimate parent company Rolta India for supplies, services, and manpower—have a pathway to reorganize through the Chapter 11 process.

4. Thus, allowing the Debtors' Chapter 11 cases to proceed does not serve the purpose of Chapter 11 relief and is not in the best interests of creditors. The Court should therefore dismiss these cases under Sections 1112(b) and 305(a) of the Bankruptcy Code.

**ARGUMENT**

5. The Debtors did not file their Chapter 11 cases in good faith, and the record since the petition date underscores their lack of meaningful reorganizational prospects. As discussed below, not only do the Debtors possess almost no assets of real value, but they have been consistently unprofitable for at least 13 years and have no established means of funding their operations, let alone paying their legal fees and other administrative expenses. Under the circumstances, dismissal is warranted because the "economic reality confronting [the Debtors]" demonstrates that they have "no realistic chance of successfully reorganizing." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (affirming dismissal on bad faith grounds); *see also* Motion ¶¶ 46–55.[3]

I. **The Debtors Are—or Will Soon Be—Administratively Insolvent**

6. As the Debtors' Monthly Operating Reports and Ms. Pulusani's deposition testimony make clear, the Debtors' cash reserves are quickly eroding. And, as described below, the Debtors do not anticipate being able to pay their own legal fees. If the Debtors' estates are not yet administratively insolvent, they soon will be.

---

[3] The record also supports dismissal of these cases under Section 1112(b)(4)(A) because there is a "substantial or continuing loss to or diminution" of the Debtors' estates, without a "reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). "[P]ost-petition negative cash flow and an inability to satisfy current expenses" —circumstances present here— "constitute a loss to or diminution of the estate." *In re Youngwoo Moon*, No. 12-20731, 2012 WL 6727186, at *2 (Bankr. S.D. Ga. Dec. 13, 2012) (internal citation omitted). Likewise, "accumulating administrative expenses are eroding the position of the estate's creditors and further diminishing the value of the estate." *In re Vallambrosa Holdings, L.L.C.*, 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009) (finding diminution of estate and dismissing case).

7.     Rolta International reported a cash balance of about $54,000 at the end of November, *see* Rolta International's Nov. 2020 Monthly Operating Report [Dkt. 143] ("Rolta Int'l MOR"), at 2, but almost 85% of that cash was due to a one-off refund of a legal retainer. *Id.* (retainer refund of $45,688). Although Rolta International's cash collateral budget projected cash reserves would increase to approximately $63,000 by the end of December, *see* Amended Motion to Use Cash Collateral (Rolta International) [Dkt. 77], Ex. C, that assumed non-debtor subsidiary AdvizeX would continue to pay Rolta International a $67,000 monthly management fee.

8.     That fee, however, is far from a reliable income stream.[4] AdvizeX did not pay the September and October 2020 fees until November; the November fee, until December; and timely payment of the December fee was also at risk. Xu Decl., Ex. B at 80:7–81:24 (Transcript of December 17, 2020 Deposition of Preetha Pulusani ("PP Tr.")). Ms. Pulusani further understands that Huntington Bank, AdvizeX's secured creditor, can block the management fee if AdvizeX fails to meet certain cash availability requirements. *Id.* 81:15–82:2; *see also* Declaration Regarding Management Fees Paid by AdvizeX [Dkt. 80] ("AdvizeX Decl."), at 2 (noting Huntington Bank "sent a reservation of rights notice" about the management fee when the Chapter 11 cases were filed). Despite Ms. Pulusani's acknowledgement that Rolta International will face a "shortfall" if the fee is not paid, PP Tr. 88:7–16, Rolta International has not sought alternative sources of financing, and Ms. Pulusani testified that she knew nothing of potential third-party financing sources. *Id.* 83:18–84:12.

9.     Tellingly, Ms. Pulusani confirmed that the Debtors do not expect to be able to pay

---

[4]     According to Ms. Pulusani, the AdvizeX management fee was "work[ed] out" only in June 2020 at the direction of non-debtor Rolta India's Chairman and Managing Director, K.K. Singh, PP Tr. 77:1–16, over seven years after AdvizeX was acquired by the Rolta enterprise, *see* AdvizeX Decl., at 1.

4

their legal fees in connection with these cases. *Id*. 62:5–19 ("**Q:** Is it your understanding that the Rolta debtors have sufficient cash to pay Mr. Maples' legal fees? **A:** . . . [A] payment of legal -- for legal services from Rolta debtors is not on the cards because our focus, again, is to keep those operations going, the business development and sales activities continuing for the Rolta debtors. *So I do not see the funds for this payment coming from the Rolta debtors*.") (emphasis added). Under the circumstances, Debtors' counsel requested a third-party guarantee of his legal fees. *Id*. 60:5–8. Although Mr. Maples' engagement letter provides that AdvizeX will execute a "Guaranty of Payment" to Mr. Maples,[5] *see* Xu Decl., Ex. C, at 2 (Engagement Letter Signed by Preetha Pulusani and Stuart Maples, Esq., dated Oct. 28, 2020 (Dep. Ex. 2) ( "Engagement Ltr.")), Ms. Pulusani testified that the guarantee has not been executed. PP Tr. 60:5–12.[6] And while Rolta International is purportedly seeking another third-party guarantor of Mr. Maples' fees, *id.* 61:23–62:4, the Chairman of Rolta India (K.K. Singh) is controlling that process, and Ms. Pulusani has no personal knowledge as to whether another guarantor has been identified. *Id.* 85:9–86:12.

10. Regarding Rolta Middle East, that Debtor's month-end cash balance for November was approximately $27,000, *see* Rolta Middle East's Nov. 2020 Monthly Operating Report [Dkt. 91], *In re Rolta Middle East FZ-LLC*, Case No. 20-82285-CRJ11 ("Rolta ME MOR"), at 2, and was projected to dwindle to under $4,500 by the end of December. *See* Amended Motion to Use Cash Collateral, *In re Rolta Middle East FZ-LLC*, Case No. 20-82285-CRJ11 [Dkt. 62], Ex. C. Similarly, Rolta UK reported a cash balance of about $225,000 at the end of November, but its

---

[5]   Ms. Pulusani's December 18 declaration insists that Debtors filed these cases "after considerable deliberation," Pulusani MTD Decl. [Dkt. 151], ¶ 4, but the timing of Mr. Maples' engagement—*one day* before the bankruptcy petitions were filed—and his engagement letter's reference to the "filing of emergency Chapter 11 bankruptcies," belie that statement. Engagement Ltr., at 1.

[6]   Specifically, she implied that Huntington Bank blocked execution of the guarantee as contravening certain of AdvizeX's loan covenants. PP Tr. 61:15-20.

5

Case 20-82282-CRJ11    Doc 175    Filed 01/04/21    Entered 01/04/21 15:20:57    Desc Main Document    Page 5 of 16

cash collateral budget projects depletion to $36,150 by the first week of February 2021. *See* Rolta UK's Nov. 2020 Monthly Operating Report [Dkt. 88], *In re Rolta UK*, Case No. 20-82287-CRJ11 ("Rolta UK MOR"), at 2; Amended Motion to Use Cash Collateral [Dkt. 62], *In re Rolta U.K. Limited*, Case No. 20-82287-CRJ11, Ex. C.

11. Thus, the Debtors' cash base is eroding, administrative expenses are accruing, and there is currently no source of funding for the Debtors' legal fees.

## II. The Debtors Have No Meaningful Prospects for Emergence from Chapter 11

12. Not only are the Debtors' cash resources depleting, but the Debtors have little, if any, hope for a successful emergence from Chapter 11 even if they obtained eleventh-hour funding. Indeed, the Debtors' schedules and financial reports belie any notion that they can rehabilitate in Chapter 11. The Debtors have few valuable assets that can be monetized for the benefit of creditors and little operations to salvage.[7]

### A. The Debtors Do Not Have Meaningful Assets Available to Creditors

13. At her deposition, Ms. Pulusani revealed that the amended schedules filed by the three "operating" Debtors on November 21 are still not fully accurate and significantly overstate the value of those Debtors' assets. The vast majority of those assets are net operating losses ("NOLs")—tax assets with little go-forward value in bankruptcy, *see* Motion ¶¶ 49–50—while the other reported significant assets are receivables of dubious collectability. And the Debtors own no intellectual property of any value.

---

[7] *See In re Vallambrosa Holdings, L.L.C.*, 419 B.R. at 89 (avoiding dismissal under section 1112(b)(4)(A) "requires, at minimum, the prospect of re-establishment of a business"); *see also In re Pena*, No. 14-09799, 2016 WL 1043736, at *6 (Bankr. D.P.R. Mar. 15, 2016) (case dismissed under § 1112(b)(4)(A) where "nothing in the record . . . suggests that financial viability for the Debtors is reasonably likely in the near future").

6

14. More specifically, the NOLs of Rolta International, Rolta Middle East, and Rolta UK comprise 63%, 67% and 66% of the total amount of their scheduled assets, respectively. *See* Amended Chapter 11 Petition, *In re Rolta International* [Dkt. 85] ("Rolta Int'l Schedules"), at 11, 16 (total assets of approximately $863 million; NOLs of approximately $109 million (federal) and $436 million (state));[8] Amended Chapter 11 Petition, *In re Rolta Middle East*, Case No. 20-82285-CRJ11 [Dkt. 67] ("Rolta ME Schedules"), at 11, 15 (total assets of approximately $138 million; NOLs of approximately $93 million); Amended Chapter 11 Petition, *In re Rolta UK Limited*, Case No. 20-82287-CRJ11 [Dkt. 66] ("Rolta UK Schedules"), at 11, 16 (total assets of approximately $108 million; NOLs of approximately $71 million). As Ms. Pulusani acknowledged at her deposition, the Debtors can *only* take advantage of these NOLs if the entities generate income— which, in over a decade, has happened only once or twice for a single Debtor. *See infra* ¶ 16. Ms. Pulusani also admitted that Rolta Middle East's $93 million in NOLs had no carryforward value at all, since that entity is not subject to corporate taxes. PP Tr. 140:22-25 ("**Q:** So is it your understanding that Rolta Middle East cannot realize value from these losses? **A:** That is correct.").

15. Similarly, Ms. Pulusani's testimony underscored that the Debtors' other core reported assets lack credible value.

- **Rolta International:** Although Rolta International's schedules list a **$188 million** loan receivable owed by ultimate parent company Rolta India, Ms. Pulusani explained that there have been no attempts to collect on the loan, and no plans to initiate collection efforts. Ms. Pulusani had no idea whether Rolta India was

---

[8] While Rolta International filed an amended set of schedules the day after Ms. Pulusani's deposition and reduced the value of its NOLs for state tax purposes from $436 million to zero, the amended schedules still reported a breakdown of those state NOLs. *See* Notice of Filing of Amended Schedules [Dkt. 152], at 20, 23–31. These amendments were made despite Ms. Pulusani's representation at the Section 341 meeting that any further amendments to the schedules would be limited to immaterial revisions. *See* Xu Decl., Ex. D, at 9:7–17 (Transcript of 341 meeting) ("They're really not material, but really more in light of just making sure that they're completely aligned 100 percent with the books.").

7

Case 20-82282-CRJ11    Doc 175    Filed 01/04/21    Entered 01/04/21 15:20:57    Desc
Main Document    Page 7 of 16

capable of repaying the loan and could not opine on the loan's actual value to Rolta International. PP Tr. 114:3–20.[9] Ms. Pulusani's testimony was similarly deficient with respect to intercompany loans receivable from Rolta UK (**$4.7 million**) and Rolta Middle East (**$7.9 million**). *Id.* 114:21–116:9. Further, Rolta International has made no serious efforts to corroborate the **$36 million** value of its investment in Rolta Canada, *see* PP Tr. 99:13–20, or **$48 million** in purported "goodwill" from an acquisition of certain entities (TUSC, Piocon, and Whitman Hart) that occurred more than 10 years ago.[10] *Id.* 103:21–104:7. Rolta International neither owns nor leases any equipment, machinery or vehicles, *id.* 100:10–14, nor does it have interests in any intellectual property. *Id.* 101:24–102:3.

- **Rolta Middle East:** Aside from its NOLs, which Ms. Pulusani conceded are worthless, Rolta Middle East's second largest asset is a loan receivable from Rolta India, valued at over **$28.5 million**. Rolta Middle East has no plans to collect on the loan, and Ms. Pulusani could not provide information about the loan's purpose or documentation. PP Tr. 141:5–23.[11] Rolta Middle East also has no interests in intellectual property. *Id.* 139:1–7.

- **Rolta UK:** Rolta UK's schedules claim NOLs exceeding **$71 million**, purportedly the sum of its operating losses for the 2017, 2018, and 2019 tax years. Rolta UK Schedules, at 16. At her deposition, however, Ms. Pulusani clarified that the operating losses for each tax year are *cumulative* of earlier years, and the actual value of the NOLs is therefore approximately **$25 million**. PP Tr. 158:7–11 ("That means what you see in 2016, 2017 is accumulated over several years. And it's 21 million that has accumulated further to 23.8 and accumulated further 25.25 in 2018, 2019."). Rolta UK similarly does not have any intellectual property interests. *Id.* 157:3–7.

---

[9] Rolta India's ability to repay the $188 million due to Rolta International is highly questionable. Indeed, Rolta India owes the Judgment Creditors alone in excess of $200 million, as a guarantor of the 2018 Notes and 2019 Notes, and as a judgment debtor pursuant to the New York Supreme Court's September 2, 2020 and October 16, 2020 judgments, and the October 20, 2020 Turnover Order (as defined in the Motion). *See generally* Motion ¶¶ 6–18.

[10] The entities Rolta International acquired in this transaction were consolidated into AdvizeX, in or around 2014. PP Tr. 104:14–25. As a consequence, it appears the value of those acquired entities is part of the value of non-Debtor AdvizeX.

[11] Rolta Middle East's NOLs and the Rolta India loan receivable, collectively, account for over 88% of the amount of its total scheduled assets.

8

### B. The Debtors Do Not Have Meaningful Business Operations to Reorganize

16. Just as the Debtors' scheduled assets have little real value available to creditors, the Debtors' revenues are similarly declining and the Debtors lack meaningful business operations to rehabilitate through the Chapter 11 process.[12] Indeed, Ms. Pulusani testified that *none* of the three purportedly operational Debtors have generated income—except for Rolta UK in only "one or two years," PP Tr. 163:23–164:8—since she began working for Rolta about 14 years ago. *See id.* 107:6–10 ("**Q:** Were there any years since you joined the Rolta organization in which Rolta International generated income? **A:** No."); *id.* 140:12–15 (same question and response regarding Rolta Middle East).

17. Moreover, in just the past two years alone, Rolta International's gross revenues have sharply declined, dropping from approximately $4.3 million for the fiscal year ending March 2019, to less than $1.5 million for the year ending March 2020. *See* Rolta Int'l Schedules, at 26. Ms. Pulusani expects the company will generate less than $1 million in revenues for the current fiscal year. PP Tr. 122:6–18. In addition, Rolta International is transitioning into a management company, with only a "couple of employees" generating "modest revenue." *Id.* 123:1–124:7. Thus, there is no basis to expect a significant increase in Rolta International's revenues going forward.

18. Similarly, Rolta Middle East's revenues have declined, dropping from approximately $3.6 million for the year ending December 2019, to less than $1.2 million for the

---

[12] Ms. Pulusani affirmed at her deposition that Debtors Rolta, LLC, Rolta Americas LLC, and Rolta Global B.V. have no business activities, no employees, no real property, and no contracts or services performed. PP Tr. 167:21–168:20, 171:21–172:10, 177:12–22.

9

period from January 2020 to the petition date. *See* Rolta ME Schedules, at 32.[13] Moreover, Ms. Pulusani's testimony did not suggest that that downward trend will reverse in the foreseeable future. While Ms. Pulusani suggested that Rolta Middle East was seeking to develop "a couple of significant opportunities," she admitted that any revenues from a successful project bid would not materialize in the near-term. *See* PP Tr. 143:8–14 ("[G]iven the timing, I don't see [the opportunities] beginning to book revenue until the next fiscal year. Because, you know, we have to first sign the contracts and then book revenue.").[14] Rolta Middle East is also plagued by chronic delays in collecting outstanding customer balances, *id.* 34:22–35:19—a source of frustration cited by Rolta Middle East's former President, who resigned in October (before the bankruptcy filings). *Id.* 32:18–34:15.

19. Rolta UK's revenues have likewise deteriorated, and Ms. Pulusani expects the trend to continue this year. PP Tr. 162:6–16; *see also* Rolta UK Schedules, at 27. She attributed the declining revenue, in part, to delays on a project on which Rolta UK has bid. PP Tr. 162:13–163:14. Her deposition testimony further reveals, however, that Rolta UK is far from securing the project. While Ms. Pulusani stated in her December 18 declaration that Rolta UK has "been selected as one of a handful of vendors" for that project "worth $20 million," *see* Declaration of

---

[13] Ms. Pulusani remarked that Rolta Middle East's revenues "should have been [stated in] fiscal years versus calendar years," and pledged to correct this error in an amended filing. PP Tr. 142:10–13. As of the time of filing of the Supplement, no amendment has been filed.

[14] Rolta Middle East's schedules omitted information about its active customer contracts, *see* Rolta ME Schedules, at 27 (Schedule G), hindering further inquiry of that Debtor's business activities. Ms. Pulusani only realized this omission during the deposition, PP Tr. 145:14–23, notwithstanding her signed declaration under penalty of perjury stating she had "examined the information in the [schedules]" and believes the contents to be "true and correct." Rolta ME Schedules, at 6. According to Ms. Pulusani, details concerning Rolta Middle East's "five to ten" active customer contracts will be provided in a forthcoming amendment to the schedules. PP Tr. 146:7–10. As of the time of filing of the Supplement, no amendment has been filed. What value, if any, these contracts represent is therefore speculative.

10

Case 20-82282-CRJ11    Doc 175    Filed 01/04/21    Entered 01/04/21 15:20:57    Desc
Main Document    Page 10 of 16

Preetha Pulusani in Response to Judgment Creditors' Motion to Dismiss [Dkt. 151] ("Pulusani MTD Decl.") ¶ 5, she testified at her deposition that Rolta UK is *only one of 15 to 20 companies competing for that project*, and merely aspires to be placed on the "short list" of bidders. PP Tr. 162:21–163:22. In total, Rolta UK currently has no more than four active customer contracts.[15] *Id.* 165:12–14.

20. Moreover, even the Debtors' depleted revenues overstate their actual cash flow. The Debtors use accrual accounting—*i.e.*, recording revenue when a transaction occurs, as opposed to when cash consideration is received. *See, e.g.*, Rolta Int'l MOR, at 2. Additionally, the Debtors' Monthly Operating Reports show that Rolta International, Rolta Middle East, and Rolta UK are heavily saddled with aging receivables that are likely uncollectable. For instance, Rolta International's largest account receivable is an outstanding balance of over $1 million owed by Wal-Mart for work performed sometime around 2017 or 2018. *See id.*, at 13; *see also* PP Tr. 191:1-9. Wal-Mart disputes the receivable, however, and Ms. Pulusani admitted that "[t]he possibilities of collecting [the receivable] are not that high" and would not happen without taking

---

[15] Ms. Pulusani realized during her deposition that Rolta UK's schedules did not disclose the Debtor's executory contracts. *See* PP Tr. 164:25-165:4; *see also* Rolta UK Schedules, at 25 (answering "No" to question, "Does the debtor have any executory contracts or unexpired leases?"). As of the time of filing of the Supplement, the schedules have not been amended. The Debtors' misstatements and omissions in their schedules establish a further ground for dismissal of these Chapter 11 cases: "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [Chapter 11]." 11 U.S.C. § 1112(b)(4)(F); *see In re Tucker*, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009) ("Debtor's inability to timely file these reports, or to insure their accuracy . . ., evidences habitual noncompliance which calls in to question a debtor's ability to effectively reorganize.") (citation, internal quotation marks, and brackets omitted). Apart from the Debtors' failure to disclose active customer contracts and overstating the value of their assets, *supra* ¶¶ 14–15 & n.14, Rolta Global's schedules do not accurately reflect certain of its ownership interests. *Compare* Amended Chapter 11 Petition, *In re Rolta Global B.V.*, Case No. 20-82284-CRJ11 [Dkt. 62], at 13 (stating that Rolta Global fully owns Rolta Middle East and Rolta UK), *with* PP Tr. 178:10–179:5 ("A board resolution was passed . . . by Rolta India for the ownership of Middle East and UK to be transferred to Rolta Global B.V., but that has not completely happened.").

legal action—which Rolta International is not pursuing. PP Tr. 191:1–192:7 (stating that Rolta International has not pursued a collections action against Wal-Mart because "[w]e just had some other more critical items that we were working").

21. Similarly, Rolta Middle East's external customers owe over $765,000 for goods and services, over 40% of which has been outstanding for more than 90 days. *See* Rolta ME MOR, at 17. Rolta UK likewise reports over $180,000 in intercompany receivables that are over 90 days past due. *See* Rolta UK MOR, at 28.

22. These aging accounts receivables of diminishing collectability, the limited handful of customer contracts, and chronic unprofitability all underscore that there is little (if any) value to salvage through these Chapter 11 cases.

    **C.**     **The Debtors Do Not Have a Feasible Pathway to Exit Chapter 11**

23. Since the petition date, the Debtors have been conspicuously silent about how they plan to reorganize their affairs. None of the potential options available to the Debtors, however, appear to have reasonable prospects for materializing.

24. For example, the Judgment Creditors anticipate that Debtors may say that they will propose a plan that relies principally on financing provided by Rolta India, either directly or indirectly. But, Rolta India has previously committed to—and then failed to—provide funding for the Debtors' restructuring efforts in the past. Notably, Ms. Pulusani omitted a critical fact when she recently represented (in her December 18 declaration) that "[w]hen [the Debtors] were working on a restructuring agreement with the bondholders in 2018, we had reached a settlement for all bondholders," Pulusani MTD Decl. ¶ 3: that restructuring effort broke down because Rolta India failed to deliver the promised funding. *See* Declaration of Kevin Wu ¶¶ 11, 13 (attached hereto as Exhibit 1). Specifically, in 2018, two consecutive restructuring support agreements (together, the

12

"RSAs") were executed between the Rolta entities and certain bondholders, including certain of the Judgment Creditors. *Id.* ¶¶ 10, 12. Both RSAs, however, were terminated because Rolta India failed to comply with its obligations under the agreements to fund a portion of the cash payment required under of those agreements into escrow. *Id.* ¶¶ 10–13. Therefore, any assertions that the Debtors can successfully reorganize with Rolta India's funding are not only speculative but also discredited by recent history.

25. Similarly, any hypothetical reorganization premised on the sale of Debtors' businesses or a portion of those businesses is likewise infeasible.[16] As the record reflects, the Debtors do not have the assets or business operations to reorganize. *See supra* ¶¶ 13–22. Additionally, Ms. Pulusani's December 18 declaration and her deposition testimony highlight the Debtors' dependence on non-debtor Rolta India. *See* Pulusani MTD Decl. ¶ 5 (explaining that the Rolta entities are "very interconnected," to the point where "it is difficult to consider any particular entity in isolation"). Indeed, according to Ms. Pulusani, the Debtors' "international offices serve mostly as sales and business development and product management offices with a lot of the intellectual property and services being both developed and provided from offshore." *See* PP Tr. 109:22–110:3; *see also* Pulusani MTD Decl. ¶ 5 (noting that any work the Debtors are contracted to perform is often executed by Rolta India's employees). Because the Debtor entities lack stand-alone value, it is unlikely their estates would receive meaningful proceeds from a sale of the Debtors' businesses pursuant to 11 U.S.C. § 363.

---

[16] The Debtors also appear to have given little thought as to how their assets could be monetized for the benefit of creditors through the Chapter 11 process. For instance, although the Debtors' NOLs dwarf their other reported assets, Ms. Pulusani testified that she has not discussed how the value of the NOLs could be preserved in these Chapter 11 cases with tax advisors, relevant professionals, or even the Debtors' corporate parent, Rolta India. *See* PP Tr. 108:22–109:9 (Rolta International), *id.* 158:25–159:10 (Rolta UK).

* * *

For the foregoing reasons and those set forth in the Motion, the Court should dismiss each of the Debtors' Chapter 11 cases.[17]

Date: January 4, 2021

*/s/ Daniel D. Sparks*
Daniel D. Sparks
Bill D. Bensinger

CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203
(205) 795-6588
ddsparks@csattorneys.com

[SIGNATURE BLOCK CONTINUES ON NEXT PAGE]

---

[17] Conversion of these Chapter 11 cases to Chapter 7, in lieu of dismissal, would not be in the best interests of creditors and the Debtors' estates. Conversion to Chapter 7 would not solve the problem of the Debtors' depleting cash reserves nor preserve—let alone enhance—the value of their assets. Importantly, the Debtors' interests in certain subsidiaries, and in particular AdvizeX, may have meaningful value that would be negatively affected in a Chapter 7 liquidation. *See* PP Tr. 72:8-19. AdvizeX—wholly owned by Rolta International—is a stand-alone business with a separate executive team. AdvizeX Decl., at 1 (explaining that AdvizeX operates as a "separate legal entity"). The Judgment Creditors strongly believe that placing AdvizeX's owner (Rolta International) into liquidation would have a deleterious effect on the value of AdvizeX and, thus, the value of Rolta International's equity interest in that entity. In particular, the Judgment Creditors are deeply concerned that a Chapter 7 liquidation would negatively affect the morale of AdvizeX employees that are key to the business and may result in the departure of those employees. Additionally, conversion to Chapter 7 creates the prospects of a Chapter 7 trustee selling Rolta International's equity in AdvizeX at a distressed price. And Rolta International's equity interest in AdvizeX is, of course, subordinate to the claims of AdvizeX's creditors—including Huntington Bank, a secured creditor.

- AND –

KOBRE & KIM LLP

John Han (*Pro Hac Vice*)
Daniel J. Saval (*Pro Hac Vice*)
Josef M. Klazen (*Pro Hac Vice*)
Donna Xu (*Pro Hac Vice*)

800 Third Ave.
New York, NY 10022
+212 488 1200
daniel.saval@kobrekim.com
josef.klazen@kobrekim.com
donna.xu@kobrekim.com

Geoffrey J. Derrick (*Pro Hac Vice*)
1919 M Street, NW
Washington, DC 20036
+202 664 1936
geoffrey.derrick@kobrekim.com

*Attorneys for Pinpoint Multi-Strategy Master Fund; Value Partners Fixed Income SPC-Value Partners Credit Opportunities Fund SP; and Value Partners Greater China High Yield Income Fund*

# CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing instrument was filed with the Court's CM/ECF system, which will send an electronic copy to the Debtors' counsel and all parties who have appeared and requested electronic notice, on this the 4th day of January, 2021.

Via US Mail:

Richard Blythe
Office of the Bankruptcy Administrator
P O Box 3045
Decatur, AL 35602

*/s/ Daniel D. Sparks*
Daniel D. Sparks